## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| SI03, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No: _____ |
| v. | ) | |
| | ) | Jury Trial Demanded |
| BODY LLC d/b/a BODY NUTRITION, | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT

SI03, Inc. ("SI03") hereby brings this Complaint against Body LLC d/b/a Body Nutrition

("Body") for breach of contract, and alleges as follows:

### PARTIES

1.      SI03 is a Delaware corporation with its principal place of business at 3849 Business

Park Place, Cape Girardeau, MO  63701.

2.      Body is a Florida limited liability corporation having, upon information and belief,

its principal place of business at 2950 47th Avenue N, St. Petersburg, FL  33714.

3.      Upon information and belief, Body is not a citizen of Delaware or Missouri.

### JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332 insofar as the parties are citizens of different states and the amount in controversy exceeds

$75,000.00.

5.      This Court has personal jurisdiction over Body pursuant to a binding forum

selection clause agreed to by Body as part of the parties' contract that is at issue in this matter.

6.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1) & (c)(2).

1

## FACTS

7.      SI03 issued its Purchase Order No. 1063 ("PO 1063") to Body on February 11, 2025, for the packaging of 111,710 single-serve packets of SI03's Nectar® protein powder product.

8.      Pursuant to its terms, PO 1063 is governed by SI03's Purchasing Terms & Conditions ("SI03 T & C"), which SI03 delivered to Body with PO 1063.

9.      Paragraph 1 of the SI03 T & C directs that PO 1063 "constitutes an offer to buy goods or services according to the description and other terms set forth on its face and reverse side. No additional or different terms offered by [Body] shall be or become part of this order and any such terms are hereby rejected.  This purchase order shall not be modified without the express written approval of [SI03]."

10.      Pursuant to Paragraph 3 of the SI03 T & C, Body "warrant[ed] that all goods and services covered by [PO 1063] will be furnished in strict accordance with the provisions of [PO 1063], the specifications furnished by [SI03], and standards, laws, rules and regulations relating to such goods or services; and shall be free from defects in design, material and workmanship.  The foregoing and all other express and implied warranties that may apply to the goods and services furnished hereunder shall be deemed conditions of this purchase order."

11.      Pursuant to Paragraph 4 of the SI03 T & C, "[u]pon delivery, [SI03]  may inspect any goods received pursuant to [PO 1063].  Goods or services which are nonconforming shall, at [SI03's] option, be replaced at [Body's] sole expense, and any replacement goods shall be subject to all terms and conditions set forth herein."

12.      Pursuant to Paragraph 16 of the SI03 T & C, Body "warrant[ed] that the goods and/or services furnished hereunder shall be in compliance with all applicable federal, state and

2

local laws and regulations supplementary thereto and [Body] will indemnify and hold harmless [SI03] against any costs, liability or losses arising out of [Body's] non-compliance."

13.     Paragraph 16 of the SI03 T & C further directs that "[t]his Agreement shall be governed and construed in accordance with the laws of the State of Missouri without regard to its conflict of laws provisions.  The parties agree that all actions and proceedings in conjunction herewith shall be brought only in the state or federal courts within the Eastern District of Missouri."

14.     SI03's PO 1063 included a delivery date of March 14, 2025.

15.     Body sent to SI03 on February 12, 2025, a written acceptance of PO 1063, including the governing SI03 T & C, without modification.

16.     Body's written acceptance of SI03's PO 1063 stated that production was "scheduled for 3/10 and it's about a 2.5 week production," indicating a completion date of approximately March 28, 2025.

17.     SI03 sent to Body on February 25, 2025, seven lots of flavored Nectar[®] protein powder products and related packaging materials for Body to package the Nectar[®] products into packets pursuant to PO 1063.

18.     Body shipped to SI03 on May 8, 2025, 108,823 single-serve packets of flavored Nectar[®] products ("Completed Nectar[®] Packets"), and the shipment was received by SI03 on May 9, 2025.

19.     SI03 tested a sample of the Completed Nectar[®] Packets pursuant to its quality control program.

20.     SI03's quality control testing showed that the Nectar[®] protein powder in the Completed Nectar[®] Packets was not mixable and, upon visual inspection, appeared abnormal.

21.     SI03 sent to Body on May 12, 2025, a copy of its quality control report showing the problems with the Nectar® products contained in the Completed Nectar® Packets and requested Body's input regarding potential reasons for the problems.

22.     Body stated that it had decided, without informing SI03, to add various amounts of a food additive to each lot of SI03's Nectar® protein powder.

23.     Body further stated that it had used a "higher-shear automatic blender" to mix the food additive into the lots of SI03's Nectar® protein powder before packaging the protein powders into packets.

24.     SI03 never authorized Body to mix any materials, including without limitation food additives, into SI03's Nectar® protein powders.

25.     The federal Food Drug and Cosmetic Act ("FDCA") requires that food additives such as the one Body mixed into SI03's Nectar® protein powders be identified on the product's labeling.

26.     The Completed Nectar® Packets that Body delivered to SI03 were misbranded pursuant to the FDCA because the products' labeling did not identify the food additive that Body had mixed into SI03's Nectar® protein powders before packaging them.

27.     SI03 did not list the food additive that Body had mixed into SI03's Nectar® protein powders on the product packaging that SI03 sent to Body because Body did not tell SI03 that Body would be blending new food additives into SI03's Nectar® protein powders until after Body had packaged all of the Nectar protein powders and delivered the finished products to SI03.

28.     Body's addition of a food additive to SI03's Nectar protein powders before packaging the products caused those products to be adulterated pursuant to the FDCA.

4

29.    The FDCA prohibits the introduction or delivery for introduction into interstate commerce of any food, such as the Nectar® protein powders contained in the Completed Nectar® Packets, that is adulterated or misbranded.

30.    The FDCA imposes civil and criminal penalties on natural persons and corporate entities that violate the prohibition against introducing or delivering for introduction into interstate commerce a food such as the Nectar® protein powders contained in the Completed Nectar® Packets that is adulterated or misbranded.

31.    The Nectar® protein powders that SI03 delivered to Body for packaging pursuant to PO 1063 were made with fully instantized, agglomerated whey protein isolate.

32.    In addition to causing the Nectar® protein powders contained in the Completed Nectar® Packets to be adulterated and misbranded pursuant to the FDCA, Body's use of a "higher-shear automatic blender" significantly altered the structure and function of the Nectar® protein powders by de-agglomerating the whey protein isolate and causing the powders to be non-instant.

33.    When SI03 learned of Body's wrongful conduct, SI03 asked Body, pursuant to Paragraphs 4 and 16 of the SI03 T & C, to replace the Nectar® protein powder products that Body had ruined and rendered non-marketable.

34.    Body refused to replace the Nectar® protein powder products that it had ruined and rendered non-marketable despite its contractual duties to do so.

35.    SI03 has been damaged by Body's wrongful conduct at least insofar as all costs for product ingredients and packaging materials, manufacturing, and shipping related to the Nectar protein powders and packaging ruined by Body have been lost as a direct result of Body's wrongful conduct.

36.     Additionally, SI03 has been forced into a back-order condition with respect to the Nectar® protein powders ruined by Body, which has caused SI03 to lose sales and negatively affected SI03's reputation.

## COUNT I

### BREACH OF CONTRACT

37.     SI03 incorporates herein by reference the allegations set forth in paragraphs 1-36.

38.     SI03 and Body entered into a contract, the terms of which are set forth in SI03's PO 1036 and SI03's T & C.

39.     SI03 performed all obligations required of it pursuant to the parties' contract.

40.     Body breached the parties' contract at least by using a "higher-shear blender" to mix a food additive into SI03's Nectar® protein powder products without approval, thereby causing the Nectar® protein powder products to be non-instant; adulterating the Nectar® protein powder products by adding a food additive without permission, in violation of the FDCA; causing the Completed Nectar® Packets to be misbranded as the result of Body's unauthorized addition of a food additive, in violation of the FDCA; refusing to replace, at its sole expense, the Nectar® protein powders and related materials, including packaging, that Body ruined; and refusing to indemnify SI03 and hold SI03 harmless against any costs, liability or losses arising out of Body's non-compliance with the terms of the parties' contract.

41.     SI03 has been damaged as a result of Body's breaches of the parties' contract.

## COUNT II

### BREACH OF WARRANTY

42.     SI03 incorporates herein by reference the allegations set forth in paragraphs 1-36.

6

43. Body provided services to SI03 pursuant to warranties set forth in the parties' contract.

44. SI03 would not have entered into the contract but for the warranties provided by Body as part of the parties' contract.

45. Body's wrongful conduct as set forth herein and in other ways not yet determined constitutes a breach of the warranties set forth in the parties' contract.

46. SI03 notified Body of its breaches of warranty in a timely fashion and requested Body to take appropriate corrective action, and Body refused to do so.

47. Body's breaches of the warranties set forth in the contract have damaged SI03 in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, SI03 prays for judgment against Body as follows:

a. That Body be found to have breached the contract between SI03 and Body;

b. That SI03 be awarded its damages resulting from Body's breaches of the parties' contract in an amount to be determined at trial, including without limitation (i) SI03' costs for product ingredients and packaging materials, manufacturing, and shipping related to the Nectar protein powders and packaging ruined by Body have been lost as a direct result of Body's wrongful conduct; and (ii) SI03's lost profits and losses associated with the negative affects to SI03's reputation caused by Body's wrongful conduct;

c. That SI03 be awarded its costs;

d. That Body be ordered to pay pre- and post-judgment interest; and

e. That the Court award such further relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

SI03 hereby demands a trial by jury on all issues properly triable by jury.

Dated:  May 30, 2025                                 Respectfully submitted,

                                                     /s/Kevin J. O'Shea
                                                     Kevin J. O'Shea #70436MO
                                                     OShea Law LLC
                                                     1744 Ridge Road
                                                     Jackson, MO  63755
                                                     Phone:  (573) 388-2296
                                                     Email:  koshea@oshealawllc.com

                                                     Counsel for Plaintiff SI03, Inc.