UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| SI03, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:25-cv-00094-SNLJ |
| | ) | |
| BODY LLC d/b/a BODY NUTRITION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff SI03, Inc. filed this lawsuit against Body LLC d/b/a Body Nutrition alleging breach of contract and warranty claims arising from a toll manufacturing contract[1] for the packaging of plaintiff's Nectar® protein powder into single-serve packets. This matter is now before the Court on the defendant's motion to dismiss the first amended complaint for failure to state a claim. [Doc. 8]. The motion is fully briefed and ripe for disposition. For the reasons set forth below, the motion is denied.

### I. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The purpose of such a motion is to test the legal

---

[1] "An arrangement under which a customer provides the materials for a manufacturing process and receives the finished goods from the manufacturer. The same party owns both the input and the output of the manufacturing process. This is a specialized form of contract manufacturing." TOLL MANUFACTURING, Black's Law Dictionary (12th ed. 2024).

sufficiency of a complaint.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Kale v. Aero Simulation, Inc.*, 139 F.4th 684, 688 (8th Cir. 2025) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

"In analyzing a motion to dismiss, a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party."  *Id.*  A plaintiff "need not provide specific facts in support of [the] allegations, but [the plaintiff] must include sufficient factual information to provide the grounds on which the claim rests, and to raise a right to relief above a speculative level."  *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (cleaned up).

## II. FIRST AMENDED COMPLAINT[2]

### *General Allegations*

Plaintiff issued purchase order no. 1063 ("PO 1063") to defendant on February 11, 2025, for the packaging of plaintiff's Nectar® protein powders into single-serve packets. [Doc. 8 at ¶ 8].  Pursuant to its terms, PO 1063 is governed by plaintiff's Purchasing Terms & Conditions ("SI03 T & C"), which was delivered to defendant with PO 1063. [Doc. 8 at ¶ 9; Doc. 9-1 at 3-6].  On February 12, 2025, defendant sent a written acceptance of PO 1063, including the governing SI03 T & C, without modification.  [*Id.*

---

[2] For purposes of this motion, the Court takes the factual allegations in the first amended complaint  [Doc. 8] to be true.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

at ¶ 16].  Paragraph 1 of the SI03 T & C states:

> This purchase order constitutes an offer to buy goods or services according to the description and other terms set forth on its face and reverse side.  No additional or different terms offered by [Body LLC d/b/a Body Nutrition] shall be or become part of this order and any such terms are hereby rejected. This purchase order shall not be modified without the express written approval of [SI03].

[Doc. 8 at ¶ 10; Doc. 9-1 at ¶ 1].  Under paragraph 3 of the SI03 T & C, defendant warrants that:

> [A]ll goods and services covered by this purchase order will be furnished in strict accordance with the provisions of this purchase order, the specifications furnished by [SI03], and standards, laws, rules and regulations relating to such goods or services; and shall be free from defects in design, material and workmanship. The foregoing and all other express and implied warranties that may apply to the goods and services furnished hereunder shall be deemed conditions of this purchase order.

[Doc. 8 at ¶ 11; Doc. 9-1 at ¶ 3].  And, under paragraph 16 of the SI03 T & C, defendant warrants that:

> [T]he goods and/or services furnished hereunder shall be in compliance with all applicable federal, state and local laws and regulations supplementary thereto and [Body] will indemnify and hold harmless [SI03] against any costs, liability or losses arising out of [Body's] non-compliance.

[Doc. 8 at ¶ 13; Doc. 9-1 at ¶ 16].  Pursuant to Paragraph 4 of the SI03 T & C, "[u]pon delivery, [SI03] may inspect any goods received pursuant to this purchase order [and] [g]oods or services which are nonconforming shall, at [SI03's] option, be replaced at [Body's] sole expense."  [Doc. 8 at ¶ 12; Doc. 9-1 at ¶ 4].

On February 25, 2025, plaintiff shipped seven lots of flavored Nectar® protein powders along with packaging materials to defendant for packaging the Nectar® protein powders as specified in PO 1063.  [Doc. 8 at ¶ 18].  On May 9, 2025, plaintiff received

3

108,823 single-serve packets of flavored Nectar® protein powder ("Completed Nectar® Packets") from defendant. [*Id.* at ¶ 19]. Plaintiff then tested a sample of the Completed Nectar® Packets pursuant to its quality control program. [*Id.* at ¶ 20]. The test results showed that the Nectar® protein powder products contained in the Completed Nectar® Packets was not mixable and appeared abnormal upon visual inspection. [*Id.* at ¶ 21].

On May 12, 2025, plaintiff sent defendant a copy of its quality control report showing the issues with the Nectar® protein powder contained in the Completed Nectar® Packets and requested defendant's input regarding potential causes. [*Id.* at ¶ 22]. Defendant informed plaintiff that a higher-shear blender was used to mix a food additive into each lot of the Nectar® protein powder prior to packaging. [*Id.* at ¶ 24]. Plaintiff had not authorized defendant to mix any materials, including food additives, into plaintiff's Nectar® protein powders. [*Id.* at ¶ 25].

The Food, Drug, and Cosmetic Act ("FDCA") requires that food additives be listed on a product's label. [*Id.* at ¶ 26]. Because plaintiff was only informed after the delivery of the Completed Nectar® Packets that defendant had mixed a food additive into the Nectar® protein powders, the additive was not listed on the labels. [*Id.* at ¶ 28]. As a result, the Completed Nectar® Packets were misbranded in violation of the FDCA. [*Id.* at ¶ 27].

The Nectar® protein powders delivered to defendant was made with fully instantized, agglomerated whey protein isolate. [*Id.* at ¶ 32]. The addition of the food additive to the Nectar® protein powders caused the product to be adulterated under the FDCA. [*Id.* at ¶ 29]. Additionally, the use of the higher-shear blender significantly

4

altered the structure and function of the Nectar® protein powders by deagglomerating the whey protein isolate and rendering the powders non-instant.  [*Id.* at ¶ 33].

As a result of defendant's breaches of the contract and the warranties therein, plaintiff suffered a monetary loss for the costs of ingredients, packaging materials, manufacturing, and shipping.  [*Id.* at ¶ 36].  Additionally, plaintiff was forced into a back-order situation with regard to the Nectar® protein powders, leading to lost sales and a negative impact on plaintiff's reputation.  [*Id.* at ¶ 37].  Pursuant to paragraphs 4 and 16 of the SI03 T & C, plaintiff made a demand on defendant to replace the product that it had rendered non-marketable, which defendant refused.  [*Id.* at ¶¶ 34, 35].

### Count I – Breach of Contract[3]

Plaintiff and defendant entered into a contract, the terms of which are set forth in PO 1036 and SI03's T & C.  [*Id.* at ¶ 39].  Plaintiff performed all obligations required of it pursuant to the parties' contract.  [*Id.* at ¶ 40].  Defendant breached the parties' contract by:

1) mixing a food additive into plaintiff's product without its knowledge or approval;

2) using a higher-shear blender to mix a food additive into plaintiff's product causing the Nectar® protein powder products to be non-instant;

3) adulterating the Nectar® protein powder products by adding a food additive in violation of the FDCA;

4) causing the Completed Nectar® Packets to be misbranded as the result of the

---

[3] The general allegations are incorporated into Count I for the breach of contract claim.

unauthorized addition of a food additive, in violation of the FDCA;

5) refusing to replace, at its sole expense, the Nectar® protein powders and related materials, including packaging, that defendant ruined; and

6) refusing to indemnify plaintiff and hold it harmless against any costs, liability or losses arising out of defendant's non-compliance with the terms of the parties' contract.

[*Id.* at ¶ 41].

### *Count II – Breach of Warranty*[4]

Defendant provided services to plaintiff pursuant to the warranties set forth in the parties' contract. [*Id.* at ¶ 44]. Plaintiff would not have entered into the contract but for the warranties provided by defendant as part of the parties' contract. [*Id.* at ¶ 45]. Defendant's wrongful conduct constitutes a breach of the warranties set forth in the parties' contract. [*Id.* at ¶ 46]. Plaintiff notified defendant of its breaches of warranty in a timely fashion and requested defendant to take appropriate corrective action, but defendant refused. [*Id.* at ¶ 47].

### III. DISCUSSION

Defendant argues the first amended complaint lacks the necessary factual allegations to state claims for breach of contract and breach of warranty. Specifically, defendant claims that the complaint is deficient because plaintiff did not specify: (1) the particular additive allegedly used by defendant; (2) the FDCA regulations allegedly

---

[4] The general allegations and the allegations in Count I are incorporated into Count II for the breach of warranty claim.

violated by the addition of the additive and a higher-shear blender; (3) the quantity of the additive required to make the product violate the FDCA; and (4) the defendant's use of the additive in excess of FDCA regulations. [Doc. 9 at 11]. Additionally, defendant argues the breach of warranty claim similarly lacks specificity as it does not identify the particular warranty allegedly breached. [*Id*.].

### *Count I – Breach of Contract*

To state a breach of contract claim under Missouri law, a plaintiff must plead: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff."[5] *Bell v. Shelter Gen. Ins. Co*., 701 S.W.3d 614, 618 (Mo. banc 2024). Taking the allegations in the first amended complaint as true and making all reasonable inferences in favor of plaintiff, the Court finds that the allegations in the first amended complaint are sufficient to state a breach of contract claim. Specifically, plaintiff alleges that: (1) there was a contract between plaintiff and defendant for the packaging of single-serve packets of plaintiff's Nectar® protein powder products; (2) defendant breached the contract by mixing a food additive into plaintiff's products without its knowledge or approval; and (3) plaintiff incurred damages as a result of the breach. Additionally, plaintiff alleges that defendant breached the contract by using a higher-shear blender to mix the food additive into the Nectar® protein powders, causing the products to be non-instant, and by refusing to pay the costs and expenses of the

---

[5] Plaintiff alleges that Missouri substantive law applies to the parties' contract [Doc. 8 at ¶ 14], which defendant did not dispute for purposes of this motion.

nonconforming products. The damages claimed by plaintiff include (1) the costs for ingredients, packaging materials, manufacturing, and shipping for the Nectar protein powders and packaging damaged by defendant, and (2) lost profits and losses associated with the negative impact on the plaintiff's reputation.

Contrary to defendant's arguments, plaintiff was not required to identify specific FDCA regulations or allege particular facts that would constitute a violation of any specific FDCA regulation. Plaintiff's claim in Count I is for breach of contract; it is not a standalone claim for FDCA violations.[6] Further, the Court will not consider facts offered by defendant in support of its motion that are not included in the first amended complaint, PO 1063, or SI03 T & C.

Because the allegations in the first amended complaint are sufficient to state a claim for breach of contract, the Court denies the motion to dismiss as to Count I.

---

[6] If plaintiff's claim relied solely on FDCA violations, it would likely be preempted. Only the federal government can sue for FDCA noncompliance. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001); *see also* 21 U.S.C. § 337(a) ("all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States."). The FDCA squarely preempts a claim seeking to sue under state law that would not be actionable absent a FDCA violation. *Id.* Simply put, where the state law claim would not exist if the FDCA did not exist, the claim is preempted. *Thogus Products Co. v. Bleep, LLC*, 1:20-CV-01887, 2023 WL 5607458, at *10 (N.D. Ohio Aug. 30, 2023); *Patane v. Nestle Waters N. Am., Inc.*, 314 F. Supp. 3d 375, 387 (D. Conn. 2018). However, just "because conduct violates the FDCA does not mean a state-law claim based on that same conduct depends on the FDCA's existence." *Lefaivre v. KV Pharm. Co.*, 636 F.3d 935, 944 (8th Cir. 2011); *see also Morris v. Medtronic, Inc.*, 4:22-CV-643-MTS, 2023 WL 2387497, at *2 (E.D. Mo. Mar. 7, 2023) ("Although Plaintiff's action sounds in conduct that violates the FDCA, she is not suing because the conduct violates the FDCA, but rather, because the HVAD was 'dangerously defective and unsafe' under state tort law."). To avoid preemption, "the conduct on which the claim is premised must be the type of conduct that would traditionally give rise to liability under state law—and that would give rise to liability under state law even if the FDCA had never been enacted." *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009).

### *Count II – Breach of Warranty*

To state a breach of warranty claim under Missouri law, a plaintiff must plead: "(1) the defendant sold goods to the plaintiff; (2) the seller made a statement of fact regarding the kind or quality of those goods; (3) the statement was a material factor inducing the buyer to purchase the goods; (4) the goods did not conform to the statement of fact; (5) the nonconformity injured the buyer; and (6) the buyer notified the seller of the nonconformity in a timely fashion." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 122 (Mo. banc 2010). Defendant argues that plaintiff fails to specify which warranty was allegedly breached or the specific conduct that constituted the breach. However, defendant's alleged wrongful conduct is detailed in the general allegations and in the breach of contract claim, which are incorporated into the breach of warranty claim. Additionally, the warranties are set forth verbatim in the general allegations. The Court finds that the allegations in the first amended complaint are sufficient to state a claim for breach of warranty and denies the motion to dismiss as to Count II.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion to Dismiss [Doc. 9] is **DENIED**.

**SO ORDERED** this 30th day of October, 2025.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE