**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| SI03, INC., | ) |
| | ) |
| Plaintiff/Counterclaim | ) |
| Defendant, | ) Civil Action No. 1:25-cv-00094 |
| | ) |
| v. | ) Jury Trial Demanded |
| | ) |
| BODY LLC d/b/a BODY | ) |
| NUTRITION, | ) |
| | ) |
| Defendant/Counterclaimant. | |

## COUNTERCLAIM

Defendant–Counterclaimant Body LLC d/b/a Body Nutrition ("Body"), by and through undersigned counsel, asserts the following Counterclaim against Plaintiff–Counterclaim Defendant SI03, Inc.

## PARTIES

1. Body is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business in Florida. Body's sole member is an individual and citizen of Florida. Body is therefore a citizen of Florida.

2. SI03 is a Delaware corporation with its principal place of business in Cape Girardeau, Missouri. SI03 is therefore a citizen of Missouri and Delaware.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because SI03's Complaint alleges an amount in controversy in excess of $75,000.

4.     This Court's diversity jurisdiction extends to Body's counterclaims because the counterclaims are compulsory, as they arise from the same transaction or occurrence at issue in the Complaint.

5.     This Court has personal jurisdiction over SI03 because SI03 is a citizen of Missouri.

6.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. §§ 1391(b)(1) and (c)(2).

## BACKGROUND

### A.    The parties' manufacturing relationship.

7.     Body and Plaintiff entered into a toll manufacturing contract dated February 6, 2024, under which Body agreed to provide specialized packaging manufacturing for Plaintiff's protein powder products (as modified or amended from time to time, the "Manufacturing Contract").

8.     Under the Manufacturing Contract, pursuant to certain purchase orders, Plaintiff ships premixed flavored whey protein powder to Body and Body fills the powder into single-serve sachets and returns the finished packaged products to Plaintiff.

9.     Under the Manufacturing Contract, Plaintiff agreed to make payments for Body's packaging in accordance with invoice terms that begin upon a purchase order's completion or within seven days of a purchase order's completion if Plaintiff was unable to accept shipment immediately upon completion.

2

10.    Since February 2024, Body has completed packaging productions pursuant to other purchase orders issued by Plaintiff in connection with the Manufacturing Contract without incident.

**B.    Plaintiff manufactures a dispute to evade payment.**

11.    After completing successful packaging productions for Plaintiff, Body accepted another purchase order dated February 11, 2025, under which Body agreed to package 111,710 single-serve packets of Plaintiff's protein powder products (the "Purchase Order," collectively with the Manufacturing Contract, the "Manufacturing Agreement").

12.    On or about February 28, 2025, Body received the protein powder products from Plaintiff for packaging, along with a new mixability test that provided an updated process for testing the products' mixability, which had not been applicable to prior product runs.

13.    That same day, along with the new mixability test, Plaintiff informed Body for the first time that Plaintiff had changed its product supplier since Body's last successful packaging run for Plaintiff.

14.    During initial test production runs, Body discovered that as a result of Plaintiff's change in supplier, Plaintiff's product from its new supplier had low flowability, demonstrated caking in filling equipment that had produced successful packaging lots for Plaintiff previously, and was too cohesive to dose consistently.

15.    The Manufacturing Agreement permits Body to "add at [its] discretion compliant processing aids including but not limited to flow agents to assist in processing on machinery."

3

16. To facilitate flow through Body's filling equipment, Body added approximately 0.3% silicon dioxide to enable processing, as permitted by the Manufacturing Agreement.

17. The Food Drug and Cosmetic Act (the "FDCA") expressly approves the use of certain additives in food, including silicon dioxide.

18. Under the FDCA, incidental additives that are present in a food at insignificant levels and do not have any technical or functional effect in that food are exempt from compliance with labeling obligations.

19. Under the FDCA, incidental additives may include processing aids, which consist of substances added to a food for their technical or functional effect in the processing.

20. Consistent with FDCA regulations and requirements regarding incidental additives and processing aids, Body's addition of approximately 0.3% silicon dioxide was permissible and did not result in any additional labeling obligations for Plaintiff's products.

21. Body provided mixability test results to Plaintiff for each product SKU in accordance with the mixability test provided by Plaintiff.

22. Unlike previous productions, Plaintiff's new mixability test for the Purchase Order required that Body provide videos and photographs of each product SKU being processed.

23. In accordance with Plaintiff's new mixability test requirements, Body provided all videos and photographs of its production requested by Plaintiff prior to running full productions for each product SKU.

4

24.     After reviewing the photographs and videos provided by Body, Plaintiff approved the mixability test results for each product SKU.

25.     In reliance on Plaintiff's approvals of the mixability and processes for each product SKU, Body completed production runs for each product SKU.

26.     Body delivered the packaged products in accordance with the Manufacturing Agreement and issued an invoice dated May 15, 2025, to Plaintiff for Body's packaging provided in connection with the Manufacturing Agreement for $9,249.98 (the "Invoice").

27.     On May 22, 2025, weeks after Body's completion of approved packaging runs, Plaintiff complained for the first time that the products' mixability was unacceptable.

28.     Plaintiff's complaint was based on completely new mixability specifications for the raw whey isolate—not those in the Purchase Order, Manufacturing Contract, or the mixability test provided in February 2025 with the products packaged for the Purchase Order.

29.     Despite approving the packaging of the products provided in connection with the Purchase Order, Plaintiff has failed and refused to pay Body the amounts due and owing for its packaging related to the Manufacturing Agreement.

## COUNT I – BREACH OF CONTRACT

30.     Body realleges all other allegations set forth in this Counterclaim and incorporates them by reference as if fully set forth herein.

31.     The Manufacturing Agreement constitutes a valid and enforceable contract between Body and Plaintiff.

5

32.     Body accepted the terms of the Manufacturing Agreement, Plaintiff received consideration pursuant to the Manufacturing Agreement, and the Manufacturing Agreement has definite and certain terms.

33.     At all times, Body fully performed its material obligations under the Manufacturing Agreement.

34.     Under the Manufacturing Agreement, Plaintiff agreed, among other things, to pay the Invoice upon completion of the packaging of all products under the Purchase Order.

35.     Despite Body's complete performance under the Manufacturing Agreement following Plaintiff's approval of Body's production and compliance with the provided mixability test, Plaintiff has failed and refused to pay the amounts due and owing under the Invoice.

36.     Plaintiff's failure and refusal to pay the amounts due and owing under the Invoice constitute a material breach of the Manufacturing Agreement.

37.     Body has been damaged as a result of Plaintiff's material breach of the Manufacturing Agreement.

WHEREFORE, Counterclaimant Body respectfully requests that the Court enter judgment against Plaintiff-Counterclaim Defendant SI03, Inc. and in favor of Body, and award Body damages in an amount that is fair and reasonable; including its attorneys' fees and costs incurred in connection with this action; and grant such other and further relief as this Court deems just and proper.

## COUNT II – BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

38.     Body hereby realleges the allegations set forth in this Counterclaim and incorporates them by reference as if fully set forth herein.

39.     As a matter of law, the Manufacturing Agreement includes an implied covenant of good faith and fair dealing.

40.     Plaintiff has sought to evade the spirit of the Manufacturing Agreement by failing to provide consistent, timely, and clear quality control standards throughout Body's performance under the Manufacturing Agreement, by rejecting products on the pretext that the products were adulterated and misbranded even though the products were in full compliance with FDCA regulations and requirements concerning additives and processing aids, and by applying arbitrary, inconsistent, and undisclosed quality control specifications not contained in or accepted under the Manufacturing Agreement to avoid payment owed to Body for its packaging.

41.     Body sought and obtained Plaintiff's approval for its packaging process and compliance with Plaintiff's applicable mixability standards for each product SKU prior to complete production runs.

42.     At Plaintiff's request, Body provided videos and photos of its production process to Plaintiff for each product SKU before beginning full production.

43.     Plaintiff explicitly approved Body's packaging process and compliance with the mixability standards for each product, including Body's videos and photos of its production process for each product SKU.

44.     In reliance on Plaintiff's consistent approval of Body's packaging process, Body completed full production runs in accordance with the Manufacturing Agreement.

45.     Unable to claim that Body failed to comply with the mixability standard provided pre-production, Plaintiff later asserted—weeks after Body's completion of the production—that the product was unacceptable based on comparisons to Plaintiff's retained premix product samples and new mixability standards not previously provided to Body.

46.     Plaintiff did not identify any failure by Body to comply with the express mixability or processing specifications in the Manufacturing Agreement.

47.     Through such conduct Plaintiff acted, or exercised a judgment conferred by the express terms of the agreements, in bad faith by acting in such a manner as to evade the spirit of the Manufacturing Agreement and deny Body its benefits under the Manufacturing Agreement. Such conduct was unfaithful to the agreed common purpose, inconsistent with the reasonable expectations arising from the Manufacturing Agreement, and violated community standards of decency, fairness, and reasonableness.

48.     By virtue of the foregoing events and actions undertaken by Plaintiff, Plaintiff has caused, and will cause in the future, substantial harm to Body through its violation and breach of the Manufacturing Agreement.

WHEREFORE, Counterclaimant Body respectfully requests that the Court enter judgment against Plaintiff-Counterclaim Defendant SI03, Inc. and in favor of Body, and award Body damages in an amount that is fair and reasonable; including its attorneys' fees

8

and costs incurred in connection with this action; and grant such other and further relief as this Court deems just and proper.

### COUNT III – UNJUST ENRICHMENT

49. Body hereby realleges the allegations set forth in this Counterclaim and incorporates them by reference as if fully set forth herein.

50. Body performed all obligations under the Manufacturing Agreement for Plaintiff's benefit and specific use by providing the packaged products in accordance with the Manufacturing Agreement.

51. Without paying Body for the packaged products, Plaintiff received thousands of packaged products without charge.

52. Body expended significant time and resources to package Plaintiff's products in accordance with the Manufacturing Agreement and worked closely with Plaintiff throughout the packaging process to ensure Plaintiff's approval of the packaged products.

53. It would be unjust for Plaintiff to retain the benefit and use of the packaged products without paying the amounts owed under the Manufacturing Agreement.

54. Plaintiff has been unjustly enriched in an amount of at least $9,249.98, receiving the benefit of Body's packaging and the packaged products without payment.

WHEREFORE, Counterclaimant Body respectfully requests that the Court enter judgment against Plaintiff-Counterclaim Defendant SI03, Inc. and in favor of Body, and award Body damages in an amount that is fair and reasonable; including its attorneys' fees and costs incurred in connection with this action; and grant such other and further relief as this Court deems just and proper.

9

## DEMAND FOR JURY TRIAL

Body hereby demands a trial by jury on all issues properly triable by jury.


By:  /s/ *Laura A. Bentele*
Laura A. Bentele          #64727MO
Mark P. Ohlms             #69262MO
Emily L. Goeke            #71897MO
Armstrong Teasdale LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone:  314.621.5070
Fax:  314.621.5065
lbentele@atllp.com
mohlms@atllp.com
egoeke@atllp.com

ATTORNEYS FOR DEFENDANT
BODY LLC D/B/A BODY NUTRITION


## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2025, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.


/s/ *Laura A. Bentele*